UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALEXIS ENRIQUE SILVA HERNANDEZ, | Case No. 2:25-cv-02304-RFB-EJY |
| Petitioner, | **ORDER** |
| v. | |
| KRISTI NOEM, *et al.*, | |
| Respondents. | |

Before the Court is the (ECF No. 2) Motion for Temporary Restraining Order or Preliminary Injunction by Petitioner Alexis Enrique Silva Hernandez. For the following reasons, the Court grants the Motion.

I.  INTRODUCTION

This case is one of a rapidly growing number before this Court challenging the federal government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The executive branch now takes the position that the INA,

---

[1] This Court has already granted petitioners relief—both preliminary and on the merits—in twenty-one similar challenges. See, e.g., Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY 2025 WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-

specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandated, no matter how long a noncitizen has resided in the country, and without any due process to challenge the factual or legal basis for their detention.

According to a leaked internal memo, the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Board of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that

---

RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cornejo-Mejia v. Bernacke, No. 2:25-cv-02139-RFB-BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Lucero Ortiz v. Bernacke, No. 2:25-cv-01833-RFB-NJK, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Perez Sales v. Mattos, No. 2:25-cv-01819-RFB-BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Hernandez Duran v. Bernacke, No. 2:25-cv-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Cabrera-Cortes v. Knight, No. 2:25-cv-01976-RFB-MDC, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137 (D. Nev. Nov. 24, 2025); Garcia-Arauz v. Noem, No. 2:25-cv-02117-RFB-EJY (D. Nev. Dec. 3, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

have considered the government's new statutory interpretation have found it incorrect and unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also, Barco Mercado v. Francis, No. 1:25-CV-06852, at *9-10 (S.D.N.Y. Nov. 26, 2025) (collecting over 350 decisions by over 160 different district judges finding the application of §1225(b)(2)(A) to noncitizens residing in the United States unlawful). A nationwide class has also been certified, and declaratory relief granted finding the government's reinterpretation of § 1225(b)(2) unlawful. See Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

Petitioner is currently detained in the custody of Federal Respondents at Nevada Southern Detention Center (NSDC) pursuant to this new detention "policy," even though an immigration judge ordered his release on bond on August 14, 2025. He seeks a preliminary injunction ordering his immediate release subject to the bond conditions imposed by the immigration judge. Because the Court finds Petitioner has satisfied the requirements for such preliminary relief, the Court enjoins Respondents from continuing to detain Petitioner on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

**II.    PROCEDURAL HISTORY**

On November 18, 2025, Petitioner filed his Petition for a Writ of Habeas Corpus and Motion for a Temporary Restraining Order or Preliminary Injunction. ECF Nos. 1, 2. On November 20, 2025, this case was transferred to the undersigned Judge as related to three pending putative class actions before this Court. ECF No. 3. On November 21, 2025, the Court ordered service of the Petition and Motion and ordered Respondents to show cause, pursuant to 28 U.S.C. § 2243, why preliminary relief should not be granted. ECF No. 5. On November 24, 2025, counsel for Federal Respondents Kristi Noem, U.S. Department of Homeland Security, Pamela Bondi,

U.S. Department of Justice, Todd Lyons, Jason Knight, and U.S. Immigration & Customs Enforcement filed a Notice of Appearance. ECF No. 6. On November 26, 2025, Federal Respondents filed their Return, which incorporated their prior briefing in Dominguez-Lara v. Noem, No. 2:25-cv-01553-RFB-BNW. ECF No. 9-2.

### III. BACKGROUND

#### A. Legal Background

The Court fully incorporates by reference the legal background regarding the government's detention authority and removal proceedings under the INA, as well as the government's challenged new detention policy, set forth in its ruling in Escobar Salgado, 2025 WL 3205356, at *2-6 (D. Nev. Nov. 17, 2025).

The Court makes the following findings of fact relevant to Petitioner's individual circumstances.

#### B. Petitioner Silva-Hernandez

The Court makes the following findings of fact relevant to Petitioner's individual circumstances. Mr. Silva-Hernandez is a native of Venezuela, entered the United States through Eagle Pass, Texas, on or about September 11, 2023, and was detained by Customs and Border Patrol (CBP) for four days, and then released on parole. ECF No. 1-2 at 2. He was not designated as an arriving alien, nor placed in expedited removal proceedings; instead, he was designated by DHS as "an alien present in the United States who has not been admitted or paroled" and charged with being inadmissible as "an alien present in the United States without being admitted or paroled" pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Id. at 8. He was issued a Notice to Appear (NTA) for standard removal proceedings under § 1229a, with a hearing date before the San Antonio Immigration Court on September 27, 2024. Id. In July 2024, Petitioner moved from Dallas, Texas to Taylorsville, Utah where he currently resides with his girlfriend. Id. at 2. Prior to his detention, he earned income as a food delivery worker through various food delivery apps. Id.

On September 27, 2024, Petitioner's removal proceedings were administratively closed by the San Antonio Immigration Court. Id. at 5. In May of 2025, Petitioner's girlfriend sought a

temporary protective order against him due to an argument they had, but they quickly resolved the issue. Id. at 2. On May 22, 2025, a police officer saw Petitioner and his girlfriend sitting together in their car and arrested Petitioner for violating the protective order. Id. Petitioner's girlfriend asked the Court to dismiss the protective order. Id. Petitioner was detained in jail for three days, and on May 25, 2025, the date he was scheduled to appear in court, he was detained by Immigration and Customs Enforcement (ICE). Id.

On May 27, 2025, DHS moved to reopen and re-calendar Petitioner's removal proceedings, and concurrently moved to dismiss the removal proceedings, so that Petitioner could be charged as an "arriving alien" and processed under expedited removal procedures. Id. at 3, 5. DHS' Motion was granted on June 9, 2025, Petitioner was placed in expedited removal proceedings, and he timely appealed that decision to the BIA. Id. The appeal remains pending. Id. In the meantime, Petitioner was given a credible fear interview by an asylum officer which resulted in a positive finding, such that he was placed back in standard removal proceedings under § 1229a. Id. at 5.

On August 6, 2025, Petitioner requested custody redetermination (*i.e.* bond hearing) by the Las Vegas Immigration Court. Id. Immigration Judge (IJ) Glen Baker held a bond hearing on August 14, 2025. Id. He found that because the IJ's decision on June 9, 2025, to grant the government's motion to dismiss Petitioner's removal proceedings so that he could be placed in expedited removal proceedings, was not administratively final, and because Petitioner was in standard removal proceedings under § 1229a, rather than expedited removal proceedings, he had jurisdiction to consider Petitioner's entitlement to release on bond under § 1226(a). Id. (citing Matter of Salas Pena, 29 I&N Dec. 173 (BIA 2025); Matter of Q Li, 29 I&N Dec. 66 (BIA 2025)). IJ Baker considered the evidence, including Petitioner's criminal history, and found that he was not a danger to the community. Id. at 5-6. Additionally based on Petitioner's fixed address, ties in the United States, record of steady employment, and pursuit of asylum and withholding of removal, IJ Baker found that he was not a flight risk and that his appearance at future immigration proceedings would be ensured by the posting of a reasonable bond. Id. at 6. Accordingly, IJ Baker granted Petitioner release subject to a $5,000 bond and alternatives to detention at the discretion of DHS. Id.

On August 15, 2025, DHS filed a EOIR Form-43 and invoked an automatic stay pending its appeal of IJ Baker's bond order under 8 C.F.R. § 1003.19(i)(2). On November 19, 2025, the day after Petitioner initiated this action, the BIA reversed IJ Baker's bond decision based on the superseding precedential decision in Hurtado. ECF No. 9-1 at 3. The sole basis for the reversal was that under Hurtado, Petitioner is "seeking admission" for purposes of § 1225(b)(2)(A), and thus ineligible for bond. See id.

## IV. LEGAL STANDARDS

### A. Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856 F.3d 666, 669 (9th Cir. 2017).

///

**B. § 2241 Petition for Writ of Habeas Corpus**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003); Trump v. J. G. G., 604 U.S. 670, 672 (2025) (describing immigration detainees' challenge to their confinement and removal as falling "within the 'core' of the writ of habeas corpus.") (*per curiam*) (citations omitted). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**V.    DISCUSSION**

**A. The Nationwide Class Action**

In his Reply, Petitioner asserts he is covered by the certified nationwide class and declaratory judgment in Maldonado Bautista. See ECF No. 10 (citing Bautista v. Santacruz, 2025 WL 3289861 and 2025 WL 3288403). In Maldonado Bautista, the Court certified the following nationwide class:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2)

>were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

See 2025 WL 3288403 at *9. Respondents have not had an opportunity to brief whether (1) Petitioner falls into the certified class definition—which the Court finds is unclear at this preliminary stage, given the circumstances of Petitioner's initial arrest, detention, and release on parole upon his arrival in the country in 2023; and (2) whether the declaratory relief granted in Maldonado Bautista is final and binding in this matter. Accordingly, the Court will defer ruling on the effect of the certified nationwide class to its ruling on the merits of the Petition, after full briefing on this issue.

### B. Administrative Exhaustion

In their incorporated briefing, Respondents argue the Court should dismiss this case because Petitioner has not exhausted his administrative remedies. "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004). Neither the habeas statute, 8 U.S.C. § 2241, nor the relevant sections of the INA require petitioners to exhaust administrative remedies before filing petitions for habeas corpus. Id. (citing Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001)).

A court may require prudential exhaustion if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Courts may however waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing, 370 F.3d at 1000. Plaintiffs bear the burden of demonstrating at least one of the Laing factors applies. See Ortega-Rangel v. Sessions, 313 F.Supp.3d 993, 1003 (9th Cir. 2018).

Respondents' argument regarding administrative exhaustion is inapplicable here where the administrative appellate process has concluded, and the BIA has reversed IJ Baker's bond release order under Hurtado. Even if that were not the case, the Court would excuse administrative exhaustion under Laing, for the same reasons it found exhaustion was excused in Jacobo Ramirez, 2025 WL 3270137 at *5-6, which the Court incorporates by reference.

### C. Preliminary Injunction

The Court now turns to the analysis of whether Petitioner has satisfied the requirements for preliminary injunctive relief. As discussed below, because the Court finds Petitioner is likely to succeed on the merits of his Petition and the remaining Winter factors weigh strongly in his favor, the Court finds he is entitled to preliminary relief.

#### 1. Likelihood of Success or Serious Questions

First, the Court finds Petitioner has satisfied the most important Winter factor: he is likely to succeed on the merits of his claim that his detention without bond under § 1225(b)(2)(A), pursuant to Hurtado, violates the INA and the Due Process Clause. See Matsumoto v. Labrador, 122 F.4th 787, 804 (9th Cir. 2024) (Likelihood of success on the merits is the most important factor in a preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023) (likelihood of success is especially important where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation).

##### i. *The Lawfulness of Petitioner's Detention Under § 1225(b)(2)(A)*

Although Petitioner's initial challenge to his detention was a constitutional challenge to DHS' invocation of the automatic stay under 8 C.F.R. § 1003.19(i)(2), Petitioner acknowledges that challenge is now moot because the BIA reversed IJ Baker's decision pursuant to Hurtado, and the automatic stay is therefore no longer in effect. The Court fully incorporates by reference its reasoning and holding regarding Respondents and the BIA's new interpretation of § 1225(b)(2)(A) from Escobar-Salgado. WL 3205356, at *10-26. As it did in Escobar-Salgado, the Court rejects Respondents' statutory interpretation here and finds Petitioner in this case is detained under § 1226(a) and its implementing regulations, because he is a resident with established ties to the country, and his most recent arrest and detention by ICE was not upon arrival and was far from

any port of entry. Id. at 22. Likewise, because this Court has found that Hurtado reverses decades of precedent and agency practice based on an incorrect statutory interpretation, the BIA's reversal of IJ Baker's bond order pursuant to Hurtado is unlawful, and IJ Baker's bond release order should remain in effect. Id.

### ii. *Due Process*

Petitioner also challenges his ongoing detention despite IJ Baker's finding that he is entitled to be released on bond as unconstitutional under the Due Process Clause of the Fifth Amendment. For the following reasons, the Court finds Petitioner is being detained in violation of his procedural and substantive due process rights.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. CONST., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., J.G.G., 604 U.S. at 673 (*per curiam*) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings . . .'") (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)); Zadvydas v. Davis, 533 U.S. 678, 693, (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) (accord).

Noncitizen detainees charged with being in the U.S. illegally are entitled to procedural due process, meaning "notice and opportunity to be heard appropriate to the nature of the case." J.G.G., 145 S.Ct. at 1006 (internal quotation marks omitted); see also A. A. R. P. v. Trump, 605 U.S. 91 (2025). "'Procedural due process rules are meant to protect' against 'the mistaken or unjustified deprivation of life, liberty, or property.'" Id. (quoting Carey v. Piphus, 435 U.S. 247, 259 (1978)). Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental

1 action that infringes a fundamental right is constitutional only if 'the infringement is narrowly
2 tailored to serve a compelling state interest.'" Id. at 960 (citing Reno, 507 U.S. at 302). "Freedom
3 from imprisonment—from government custody, detention, or other forms of physical restraint—
4 lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690.
5 Substantive due process thus protects noncitizens from arbitrary confinement by the government.
6 Immigration detention is civil detention, and civil detention violates a noncitizen's substantive due
7 process rights except in certain "special and narrow nonpunitive circumstances where a special
8 justification . . . outweighs the individual's constitutionally protected interest in avoiding physical
9 restraint." Id. at 690 (internal quotations omitted) (quoting Foucha v. Louisiana, 504 U.S. 71, 80
10 (1992); Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

11 Even if the Court were to accept the government's new reading of § 1225(b)(2), it would
12 still be faced with Petitioner's due process challenge to his prolonged detention despite an IJ's
13 finding that he should be released. Indeed, the Ninth Circuit has questioned the constitutionality
14 of § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government.

19 Rodriguez v. Marin, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

20 Respondents fail to meaningfully address Petitioner's challenge to the lawfulness of his
21 detention under the Due Process Clause. To the extent Respondents assert the Supreme Court has
22 upheld mandatory detention for certain classes of noncitizens, including noncitizens convicted of
23 aggravated felonies, and noncitizens seeking entry or "initial entrants" into the country, those cases
24 are inapposite when applied to noncitizens like Petitioner, who lacks criminal convictions under §
25 1226(c) and has established connections to our country. See Escobar Salgado, 2025 WL 3205356
26 at *23-24 (discussing Respondents misplaced reliance on Thuraissigiam and Demore). The Court
27 now turns to the likelihood of success on the merits of Petitioner's due process challenge to his
28 detention.

1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner despite an IJ granting him release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to continue to detain him despite the IJ's order that he be released on bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances). The first Mathews factor thus weighs heavily in Petitioner's favor.

Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews,

424 U.S. at 335. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner even after failing to make an individualized showing that his detention is warranted. The near certainty of erroneous deprivation caused by this lack of process is demonstrated by the fact that an IJ in this case held a bond hearing for Petitioner prior to Hurtado, considered all relevant evidence and factors, and found that Petitioner's detention without bond was not justified.

The additional procedures in this case would simply be a recognition of, and respect for, existing procedures under § 1226(a), which include an individualized custody redetermination by an immigration judge like the one Petitioner received prior to Hurtado. These procedures substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because they require the government to establish that he presents a flight risk or danger to the community to continue detaining him for the pendency of removal proceedings. These procedures enforce the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. As such, the second Mathews factor also weighs heavily in favor of Petitioner.

The third and final Mathews factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any individualized reason why detaining Petitioner is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532–33

1  (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention. Hernandez, 872 F.3d at 996 (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In sum, the Court finds the Mathews factors weigh heavily in favor of Petitioner, and therefore, his detention without the opportunity for release on bond violates his procedural due process rights.

2. Substantive Due Process

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty. Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary confinement is grave cause for concern. Accordingly, this Court further finds that Petitioner is likely being detained in violation of his substantive due process rights.

**2.  Irreparable Harm**

The next factor requires a showing "that irreparable harm is likely, not just possible" in the absence of preliminary injunctive relief. All. for the Wild Rockies, 632 F.3d at 1131. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, it follows "inexorably" from this Court's conclusion that Petitioner's

1  detention despite an IJ's finding that he should be released on bond violates his due process rights
2  that he has carried his burden as to irreparable harm. Hernandez, 872 F.3d at 995. The Ninth Circuit
3  has further recognized, in concrete terms, the irreparable harms "imposed on anyone subject to
4  immigration detention (or other forms of imprisonment)." Id. In the absence of relief, "harms such
5  as these will continue to occur needlessly on a daily basis." Id.

### 3. Balance of Equities and Public Interest

The remaining two factors for a preliminary injunction—the balance of equities and public interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting Nken, 556 U.S. at 435). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The government asserts the Court should refrain from intervening due to the government and BIA's interest in enforcing immigration law without judicial intervention. Again, the Court finds that interest is adequately protected by the bond hearing process, and its ability to present individualized evidence regarding its contention that prolonged detention of Petitioner is warranted. The Court merely enjoins Respondents from continuing to prevent Petitioner's release on the basis that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), pursuant to its obligation to interpret the relevant statutory provisions of the INA "independent of influence from the political branches." Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024).

Further, the government's new reading of the INA upends decades of consistent agency practice, and subjects millions of individuals to mandatory detention who have hitherto been afforded release on bond. The attendant administrative, fiscal, and social costs of such a mass detention policy are difficult to fathom. Therefore, it is doubtful that this policy supports the

government's interest in steady enforcement of the INA. Moreover, it is the government's new reading of the INA which subjects millions of individuals to mandatory detention that is creating the significant fiscal and administrative burden on the government. However, this is a burden of the executive branch's choosing, which is unilaterally being imposed on the public.

Further, Respondents' claim that an injunction would burden the government because judicial intervention would disrupt the *status quo* fails, because the *status quo* for purposes of a preliminary injunction refers "not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000). The *status quo* thus precedes DHS and DOJ's July 8, 2025 change in policy—in other words, the *status quo* is that § 1226(a) applies to Petitioner, as IJ Baker concluded. As such, the burden on the government is minimal because the preliminary injunction simply preserves the *status quo*.

In contrast, the hardships faced by Petitioner and the public interest in granting injunctive relief weigh strongly in his favor. Detention has separated Petitioner from his partner, employment, and community. Hernandez, 872 F.3d at 996 ("in addition to the potential hardships facing [the plaintiffs] in the absence of the injunction, the court may consider the indirect hardship to their friends and family members") (quotation marks and citation omitted). And because the Court has found it is likely that Respondents are unlawfully detaining Petitioner under § 1225(b)(2) and in violation of the Constitution, "neither equity or the public interest are furthered" by allowing Respondents to continue to violate the law—quite the opposite. See Galvez, 52 F.4th at 832; Hernandez, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of . . . a likely unconstitutional process.").

As such, this Court finds the balance of the equities and public interest "tip sharply towards" Petitioner. All. For the Wild Rockies, 632 F.3d at 1127. Therefore, even under a lesser showing that Petitioner has raised only "serious questions going to the merits" of his challenge to his detention, Petitioner is entitled to a preliminary injunction. Id.

///

### D. Scope of Relief

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas, 391 U.S. at 238. "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

The Court finds that the specific harm suffered by Petitioner—prolonged detention, after a constitutionally adequate bond hearing established that his continued detention was not warranted—is remedied by ordering his immediate release, subject to the bond conditions imposed by IJ Baker, and enjoining Respondents from preventing his release on the basis that he is detained under § 1225(b)(2).

### E. Bond

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued that releasing Petitioner on bond will be costly. Therefore, the Court declines to impose bond beyond the amount imposed by an IJ under § 1226(a).

///

## VI. CONCLUSION

Based on the foregoing, and on the record and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Motion for Preliminary Injunction (ECF No. 2) is **GRANTED**. Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner, no later than **9:00 p.m. on December 3, 2025**. Petitioner's release will be subject to the bond and other conditions imposed by IJ Baker. He will have until **December 10, 2025** to satisfy the bond conditions. If he fails to do so, he will be subject to rearrest and re-detention under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

**IT IS FURTHER ORDERED** that Respondents shall file a notice by **December 5, 2025**, confirming their compliance with this Order.

**IT IS FURTHER ORDERED** that on or before **December 17, 2025**, the parties shall file a stipulated proposed scheduling order for full briefing on the merits of the Petition.

**DATED:** December 3, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**